IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**AURELIO QUINONES-PORTOCARRERO**
Reg #33304-018                                                                        **PETITIONER**

VS.                                    NO. 2:22-cv-00134-LPR-ERE

**JOHN P. YATES,**
**Warden, FCI-Forrest City Low**                                    **RESPONDENT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

I.   **INTRODUCTION**

Aurelio Quinones-Portocarrero, an inmate in the Federal Correctional Institution, Forrest City-Low ("FCI-FC-Low") in Forrest City, Arkansas, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Doc. 1*. Mr. Quinones-Portocarrero is an alien, subject to an ICE detainer. He alleges that based

on his noncitizen status, the Bureau of Prisons ("BOP" or "Bureau") is denying him the benefits of rehabilitative programs, including a potential one-year sentence reduction and placement in a residential reentry center. For reasons that follow, the Court recommends that the petition be dismissed with prejudice.

## II.     BACKGROUND

In 2001, a jury in the United States District Court for the Middle District of Florida found Mr. Quinones-Portocarrero guilty of conspiracy to possess and possession of five kilograms or more of cocaine, with intent to distribute, while on board a vessel subject to the jurisdiction of the United States. *Quinones-Portocarreo*, No. 8:05-cv-255-T-26TBM, ECF No. 4, at 1-2 (M.D. Fla. Feb. 10, 2005) (order denying § 2255 motion).  The district court sentenced him to serve 360 months in prison, followed by five years' supervised release. *Id*. The Eleventh Circuit affirmed the conviction and sentence on direct appeal. *Id*.

According to the BOP's website,[1] Mr. Quinones-Portocarrero's anticipated release date is June 19, 2026.  It is undisputed that he has an Immigration and Customs Enforcement (ICE) detainer in place, and he is subject to immediate deportation upon his release from the BOP. *Doc. 6-1*.

On July 25, 2022, Mr. Quinones-Portocarrero filed the § 2241 habeas petition

---

[1] See www.bop.gov/inmateloc/ (last accessed December 2, 2022).

before the Court. *Doc. 1*. He alleges that the BOP discriminates against non-U.S. citizens like him, in violation of the equal protection component of the Fifth Amendment, by denying them: (1) a sentence reduction upon successful completion of the Bureau's Residential Drug Abuse Program ("RDAP"); and (2) early placement in prerelease custody or early transfer to supervised release under the Bureau's Earned Time Credit Program ("ETCP"). *Doc. 1 at 2*; *Doc. 8 at 3-4*. By way of relief, Mr. Quinones-Portocarrero seeks injunctive relief enjoining the alleged discrimination. *Id. at 5*. In addition, he asks the Court to order Respondent to grant him time credits under the ETCP. *Doc. 8 at 6*.

On October 17, 2022, Respondent filed a response, asserting that Mr. Quinones-Portocarrero's petition should be dismissed for failure to exhaust administrative remedies or, alternatively, because his equal protection claim fails on the merits. *Doc. 6 at 3-4*.

On November 16, 2022, Mr. Quinones-Portocarrero filed a reply, arguing that exhaustion of his administrative remedies would be futile and should be excused. *Doc. 8 at 2*. As to the merits of his claim, he asserts that the Fifth Amendment's equal protection guarantee entitles him to the same opportunities and benefits available to inmates who are U.S. citizens. *Doc. 8 at 3-6*.

For reasons that follow, the Court finds that: (1) Mr. Quinones-Portocarrero should be excused from exhausting his administrative remedies because requiring

him to do would be futile; and (2) the petition should be dismissed with prejudice because Mr. Quinones-Portocarrero's equal protection claim is without merit.

## III. DISCUSSION

### A. Statutory and Regulatory Framework

The BOP's RDAP, authorized under 18 U.S.C. § 3621, is a voluntary substance abuse program that provides eligible inmates the opportunity to earn up to a one-year sentence reduction after successful completion of the program.[2] RDAP includes a community-based component, which requires placement in a halfway house or community-based reentry facility and must be completed in order receive a sentence reduction. See 28 CFR § 550.53(a)(3). Section 3621(e)(2)(B) grants the BOP *discretionary* authority to reduce an eligible inmate's sentence if the inmate completes RDAP. "When an *eligible* prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (emphasis added). Accordingly, a BOP prisoner has no protected liberty interest in admission to RDAP or in receiving a sentence reduction upon completion of the program. *Giannini v. Federal Bureau of Prisons*, 405 Fed. Appx. 96, 97, 2010 WL 5297188, at *1 (8th Cir. 2010).

---

[2] Section 3621(b) provides in part: "The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." FCI-FC-Low, where Mr. Quinones-Portocarrero is housed, does not offer a residential drug abuse program.

The BOP's ETCP, authorized under 18 U.S.C. § 3624 and the First Step Act of 2018, gives prisoners the opportunity to earn time credits that may apply toward early placement in pre-release custody or transfer to supervised release. 18 U.S.C. § 3632(d)(4). Pre-release placement occurs at the latter stages of a sentence when the prisoner, if eligible, prepares for reintegration to society through community-based confinement.[3] The BOP has the express authority to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). Accordingly, prisoners have no protected right to placement in a particular facility or to pre-release custody in community-based confinement. *Staszak v. Romine,* 221 F.3d 1344 (8th Cir. 2000) (unpublished opinion) (holding that placement in a halfway house and participation in a work release program did not provide "the sort of substantial freedom that gives rise to a liberty interest inherent in the Due Process Clause").

Especially relevant in this case, the BOP has exercised its discretion to deny early release under the RDAP to several categories of prisoners, including inmates like Mr. Quinones-Portocarrero, who are subject to ICE detainers. *See* 28 C.F.R. § 550.55(b)(1). Similarly, inmates subject to ICE detainers are ineligible to have ETCP

---

[3] The BOP is charged by statute as follows:
> The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).

time credits applied toward placement in prerelease custody or transfer to supervised release. *See* 28 C.F.R. § 523.44(a)(2).

### B.    Exhaustion of Administrative Remedies

A federal inmate must normally exhaust his administrative remedies before seeking habeas relief under § 2241.[4] *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974). Although this judicially created exhaustion requirement is not mandated by statute or a jurisdictional prerequisite, see *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007), it is designed to serve several purposes including:

> (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level.

*Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976) (citing *McKart v. United States*, 395 U.S. 185, 194-195 (1969)).

Respondent presents evidence that Mr. Quinones-Portocarrero did not attempt

---

[4] The BOP has a four-step administrative process for resolving inmate grievances: (1) an attempt at informal resolution with prison staff; (2) submission of a formal grievance to the Warden, on form BP-9, delivered to the institution staff member designated to it; (3) an appeal of an unfavorable Warden's decision to the appropriate Regional Director, on form BP-10; and (4) an appeal of an unfavorable Regional Director's decision to the General Counsel, on form BP-11. See 28 C.F.R. §§ 542.13–542.18. Proper exhaustion of administrative remedies "'means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

to exhaust administrative remedies prior to filing this habeas action,[5] and Mr. Quinones-Portocarrero does not claim that he did. However, citing *Gallegos-Hernandez v. United States*, 688 F.3d 190 (5th Cir. 2012), Mr. Quinones-Portocarrero argues that resort to the BOP's grievance procedure would be futile because the BOP is charged with enforcing the very regulations that prevent him from obtaining the relief he seeks. *Doc. 2 at 2*.

In *Gallegos-Hernandez*, the Fifth Circuit held that exhaustion was futile where the petitioner, who had an ICE detainer in place, sought the invalidation of the same regulations at issue here, which excluded him from participating in rehabilitation programs and halfway house placement. *Gallegos-Hernandez*, 688 F.3d at 194 (5th Cir. 2012) ("Thus, it would have been futile for him to make an administrative challenge seeking this relief from those who are charged to enforce the regulation.").

Respondent correctly notes the lack of Eighth Circuit caselaw squarely addressing the exhaustion issue presented in this case. *Doc. 6 at 3*. The Eighth Circuit has, however, recognized that federal courts may excuse compliance with judicially-created exhaustion requirements when doing so would be futile. *Frango*

---

[5] Respondent presents the declaration of Rashonda Smith, a BOP Associate Warden's Secretary, who states that Mr. Quinones-Portocarrero has failed to file any administrative grievances complaining that he is not allowed to participate in the RDAP or ETCP. *Doc. 6-2*.

*v. Gonzales*, 437 F.3d 726, 728–29 (8th Cir. 2006); *see also Elwood v. Jeter,* 386 F.3d 842, 845 n. 1 (8ᵗʰ Cir.2004) (noting in § 2241 case that the Government waived the exhaustion requirement because it conceded that continued use of the grievance procedure to contest the validity of the BOP's policy would be futile).

The circumstances in this case are nearly identical to those presented in *Gallegos-Hernandez*, and it is far from clear that the exhaustion of administrative remedies would serve a useful purpose in this case. Because the exhaustion of administrative remedies would be futile, Mr. Quinones-Portocarrero should be excused from the exhaustion requirement.

### C. Merits Review

The guarantee of equal protection granted under the Fifth and Fourteen Amendments,[6] "generally requires the government to treat similarly situated people alike." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985)). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all

---

[6] The Equal Protection Clause of the Fourteenth Amendment, which applies to state actors, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Although the Fifth Amendment, which applies to the federal government, contains no explicit equal protection guarantee, the Supreme Court has held that the Fifth Amendment's Due Process Clause includes a guarantee of equal protection equivalent to Fourteenth Amendment's Equal Protection Clause. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citing F.*S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).

Under the plain language of the BOP regulations at issue, Mr. Quinones-Portocarrero's status as an inmate subject to an ICE detainer, *not* his status as an alien, makes him ineligible for early release or transfer to prerelease custody. See 28 C.F.R. § 550.55(b)(1) (making "Immigration and Customs Enforcement detainees" ineligible for early release); 28 C.F.R. § 5523.44(a)(2) (providing that the BOP may not apply time credits toward prerelease custody or early transfer to supervised release to any inmate "subject to a final order of removal under immigration laws"). The regulations therefore treat prisoners with ICE detainers differently from prisoners without ICE detainers, but they do not exclude inmates from receiving sentence reductions or pre-release placement because they are noncitizens. *See Gallegos-Hernandez*, 688 F.3d at 195–96 (observing that alien prisoners with ICE detainers cannot show that exclusion from rehabilitation programs or halfway house placement establishes disparate treatment compared to similarly situated prisoners who are not aliens because "the statute and regulations classify prisoners—not as aliens and non-aliens—but as those who have ICE detainers against them and those who do not").

"[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an

inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. at 10 (citations omitted). Here, excluding ICE detainees from residential drug rehabilitation programs and community-based confinement serves the legitimate purpose of reducing the risk that inmates facing deportation will flee. *See Builes v. Warden Moshannon Valley Correctional Center,* 712 Fed. Appx. 132, 134 (3rd Cir. 2017) (holding that excluding ICE detainees from residential drug rehabilitation programs and community-based confinement is rationally related to legitimate BOP interests in reducing the flight risk posed by prisoners facing removal and making rehabilitative programs available only to prisoners who have a lawful right to remain in the United States); *Gallegos-Hernandez*, 688 F.3d at 196 (finding that excluding ICE detainees from halfway house placement is rationally related to preventing those detainees from fleeing).

### IV. CONCLUSION

To obtain habeas relief under § 2241, a petitioner must allege and demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 18 U.S.C. § 2241(c)(3). Here, Mr. Quinones-Portocarrero is unable to demonstrate that his exclusion from participation in a residential drug program or placement in community-based confinement violates his right to equal protection or any other federal right.

IT IS THEREFORE RECOMMENDED that Petitioner Aurelio Quinones-Portocarrero's petition for writ of habeas corpus (*Doc. 1*) be DENIED, and the case DISMISSED, WITH PREJUDICE.

Dated this 2nd day of December, 2022.

_____
UNITED STATES MAGISTRATE JUDGE